

# NUMBERS 13-22-00330-CR AND 13-22-00331-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## EX PARTE NATHANIEL CARL BANKS JR.

### On appeal from the 85th District Court
### of Brazos County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Silva and Peña
### Memorandum Opinion by Justice Silva

Appellant Nathaniel Carl Banks Jr.[1] appeals the trial court's orders denying his applications for pretrial writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.08. By one issue, Banks argues his pretrial bail amounts are excessive, oppressive, and beyond Banks's financial means. We affirm.

---

[1] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

## I.     BACKGROUND

On December 2, 2021, Banks was indicted for unlawful possession of a firearm by a felon, a third-degree felony enhanced to a first-degree felony due to an allegation of multiple prior felony convictions, and aggravated assault with a deadly weapon, a second-degree felony enhanced to a first-degree felony for the same reason. *See* TEX. PENAL CODE ANN. §§ 19.02(c), 28.02(d)(1), 37.09(c). The trial court set Banks's bail at $100,000 and $350,000, respectively. On May 31, 2022, Banks filed his applications for writ of habeas corpus seeking a bail reduction in both causes. *See* TEX. CODE CRIM. PROC. ANN. arts. 11.08, 17.01 ("'Bail' is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond.").

### A.     The Exhibits

At a hearing on Banks's applications, the trial court admitted into evidence the arrest warrant affidavit and the complainant's medical records for the instant offenses, as well as the arrest warrant affidavits and judgments for Banks's prior convictions. We summarize the contents of the documents, beginning with Banks's prior convictions.

On August 9, 1999, Banks pleaded guilty and was placed on community supervision for the felony offense of possession of a prohibited weapon (namely, a short-barrel firearm). *See* TEX. PENAL CODE ANN. § 46.05. Less than one month later, Banks was arrested for his involvement in two separate shootings and charged with murder and aggravated assault with a deadly weapon. The first shooting occurred on September 5, 1999, between 1:30 and 2:30 a.m. The complainant, Michael Manuel, told police he had

2

been walking when Banks called out to him from the passenger side of a vehicle, exited the vehicle, and approached him. Once the vehicle's driver repositioned the vehicle, Manuel believed he was being "set up for a robbery" and threw up his arms in anticipation of a "sucker punch" from Banks. Instead, Banks withdrew a firearm and shot Manuel. The bullet struck Manuel's right forearm and became lodged in the back of his left hand. Manuel fled. He later told police that when he turned back to see if Banks was in pursuit, he witnessed Banks "casually" returning to his vehicle.

One hour later, police responded to a shooting outside a convenience store, where witnesses observed Banks approach a man, later identified as Javier Alvarez, and demand money. When Alvarez attempted to flee, Banks shot Alvarez in the back of the head at close range. Alvarez was transported to a nearby hospital and later succumbed to his injuries.

On April 2, 2001, the trial court revoked Banks's community supervision for the offense of possession of a prohibited weapon and sentenced Banks to three years' imprisonment.[2] Seven months later, Banks pleaded guilty to the offense of attempted murder[3] and was sentenced to twenty years' imprisonment. While serving his sentences for possession of a prohibited weapon and attempted murder, Banks was indicted and

---

[2] Revocation was based on allegations that Banks violated his conditions of community supervision on or about January 24, 2000. The record contains no other information about his alleged violations.

[3] Banks was initially indicted on the offense of attempted capital murder. However, it is unclear from the record whether the attempted murder conviction was intended to be a lesser-included offense of his indicted charge. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09 (lesser included offense); *Shute v. State*, 877 S.W.2d 314 (Tex. Crim. App. 1994) (observing attempted murder may be a lesser-included offense of attempted capital murder). Additionally, as part of a plea bargain agreement, the State agreed to dismiss cause number 27448-261; it is also unclear what offense cause number 27448-261 relates to.

pleaded guilty to possession of a prohibited item in a corrections facility. Banks was sentenced to two years' confinement.

Twenty-two years later and less than one year after being released from prison, Banks was arrested for the instant offenses. On or about September 25, 2021, police responded to reports of a shooting, occurring in the early morning hours outside of a residence. The complainant Cleveland Goosby had been shot multiple times at close range in the chest and legs. Goosby and a witness identified Banks as the perpetrator, and police recovered a firearm and magazine nearby. Following Banks's arrest, he provided a statement to police. Banks initially denied knowing Goosby but later acquiesced that he knew who Goosby was. Banks, however, maintained that he had not been involved in the shooting and claimed that he had been walking home after leaving his "girlfriend's" residence. Subsequent information obtained during the investigation indicated that Banks had not been at his girlfriend's residence that evening.

## B.    Witness Testimony

Prior to issuing its ruling, the trial court also heard testimony from several witnesses, including Banks, in support of his request for a bail reduction.

Sheera Jones, Banks's former supervisor, testified that Banks had been employed as a construction traffic control "flagger" for four months preceding his arrest. Jones described Banks as a "good" employee and stated his employment would be reinstated if he were able to make bail.

Banks's mother, Sheila Banks, and fiancée, Latasha Risby, testified that neither could afford to pay his current bail and that they both had experienced financial hardship

4

in his absence. Risby, who has known Banks for "[a]lmost a year," stated she relied on Banks to pay her rent, utilities, and groceries. Sheila, a retired custodial worker, testified that she also depended on Banks financially and to assist around her home. Sheila testified that Banks was residing with her at the time of his arrest, and should he be released, he could return to live with her. Sheila said she would ensure Banks's compliance with any conditions of pretrial supervision. Sheila and Risby further stated they would be able to provide Banks with transportation as needed if he were to be released.

Banks thereafter testified that he lacked the financial means to make bail at the current set amounts but averred that he could afford to make ten percent of a cumulative $100,000 bail bond. Banks agreed when asked whether he had significant ties to the community and stated that, if he were released, he would abide by any pretrial conditions ordered by the trial court.

At the conclusion of the hearing, the trial court ordered that the bail remain at the present amounts. This appeal followed.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

A defendant who has been confined after indictment for a felony offense—but not yet finally convicted—may file a writ of habeas corpus in the district court pursuant to Article 11.08. *See* TEX. CODE CRIM. PROC. ANN. art. 11.08; *Jordan v. State*, 54 S.W.3d 783, 786 (Tex. Crim. App. 2001); *Ex parte Braswell*, 630 S.W.3d 600, 601 (Tex. App.—Waco 2021, no pet.). An applicant for habeas corpus relief must prove his claims by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App.

5

2006); *Ex parte Graves*, 271 S.W.3d 801, 803 (Tex. App.—Waco 2008, pet. ref'd). In a habeas challenge to the amount of bail, the applicant must show that the bail set by the trial court is excessive. *Ex parte Benefield*, 403 S.W.3d 240, 242 (Tex. Crim. App. 2013) (Cochran, J., concurring); *Ex parte Reyes-Martinez*, 653 S.W.3d 273, 280 (Tex. App.—Austin 2022, no pet.). We review a trial court's ruling on a pretrial writ of habeas corpus under an abuse of discretion standard. *Ex parte Cardenas*, 557 S.W.3d 722, 729–30 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). "An abuse of discretion does not occur unless the trial court acts arbitrarily or unreasonably or without reference to any guiding rules and principles." *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021) (cleaned up).

A trial court's determination of the appropriate bail amount is a "balancing act 'between the defendant's presumption of innocence and the State's interest in assuring the defendant's appearance at trial.'" *Ex parte Cardenas*, 557 S.W.3d at 730 (quoting *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd)). The Texas Code of Criminal Procedure sets forth factors that, together with the state and federal constitution, govern the trial court's exercise of its discretion:

1. Bail and any conditions of bail shall be sufficient to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used to make bail an instrument of oppression.

3. The nature of the offense and the circumstances under which the offense was committed are to be considered . . . .

4. The ability to make bail shall be considered . . . .

6

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant, . . . shall be considered . . . .

7. The citizenship status of the defendant shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15(a); *see also* U.S. CONST. amend. VIII; TEX. CONST. art. I, § 11. Courts may also take into consideration evidence of the defendant's employment record, familial ties, the existence of other outstanding bonds, and the defendant's conformity with prior bond conditions. *Ex parte Cardenas*, 557 S.W.3d at 730.

### III. DISCUSSION

By a single issue, Banks challenges the trial court's denial of his application for habeas relief, asserting that he met his burden.

We acknowledge Banks presented evidence of his family's reliance on him for financial support and each witness summarily testified to their lack of financial means to make the current bail amounts. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(a). However, an inability to make the bail set by the trial court does not automatically render the bail amount excessive, and there was no evidence of his or his family's specific assets nor testimony explaining what efforts, if any, had been made to obtain the bond. *See Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.) (affirming trial court's refusal to lower bail where evidence provided "did not detail either his or his family's specific assets and financial resources, nor did [appellant] explain what efforts, if any, were made to furnish the bond"); *see also Ex parte Cano*, No. 01-22-00692-CR, 2023 WL 2920305, at *5 (Tex. App.—Houston [1st Dist.] Apr. 13, 2023, no pet. h.) (mem. op., not

designated for publication) ("Vague references to inability to make bond, in the absence of evidence detailing the accused's specific assets and financial resources, do not support bail reduction."); *Ex parte Hopkins*, No. 03-19-00695-CR, 2020 WL 4929775, at *3 (Tex. App.—Austin Aug. 20, 2020, no pet.) (mem. op., not designated for publication) ("[A] bail reduction is not favored when the defendant makes vague references to inability to make bail without detailing his specific assets and financial resources.").

Moreover, courts have been instructed by the court of criminal appeals to give due weight to two "primary factors"—the length of sentence that may be imposed and the nature of the indicted offense—neither of which are advantageous to Banks. *See Ex parte Temple*, 595 S.W.3d 825, 829 (Tex. App.—Houston [14th Dist.] 2019, pet. ref'd) (citing *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. [Panel Op.] 1981)); *see also Ex parte Clay*, No. 10-22-00010-CR, 2022 WL 1177493, at *3 (Tex. App.—Waco Apr. 20, 2022, no pet.) (mem. op., not designated for publication) ("When the nature of the offense is serious and a lengthy sentence following trial is probable, bail should be 'set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy prison sentence might be not to appear.'" (quoting *Ex parte Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.))). First, if convicted and the enhancement paragraphs are found to be true, Banks faces a mandatory sentence range of twenty-five years to ninety-nine years' imprisonment on each of the indicted offenses. *See* TEX. PENAL CODE ANN. § 12.42(d); *see also Ex parte Clay*, 2022 WL 1177493, at *3 (concluding, for first-degree felony where appellant faced five to ninety-nine years' imprisonment, $1,000,000 bail was not excessively high); *Ex parte Lee*,

No. 13-20-00021-CR, 2020 WL 2988644, at *3–5 (Tex. App.—Corpus Christi–Edinburg June 4, 2020, no pet.) (mem. op., not designated for publication) (concluding same where bail was set at $1,000,000); *Ex parte Cook*, No. 02-18-00537-CR, 2019 WL 2323643, at *3 (Tex. App.—Fort Worth May 31, 2019, no pet.) (mem. op., not designated for publication) (concluding same where bail was set at $750,000); *Ex parte Garner*, No. 10-18-00129-CR, 2018 WL 3469834, at *2 (Tex. App.—Waco July 18, 2018, no pet.) (mem. op., not designated for publication) (concluding same where bail was set at $1,000,000). Second, the serious and violent nature of the charged offenses, wherein Banks is alleged to have unlawfully possessed a firearm and used the unlawfully possessed firearm to shoot the complainant multiple times at close range, also weighs against a determination that the bail was excessive. *See Ex parte Temple*, 595 S.W.3d at 829; *see also Ex parte Berry*, No. 09-14-00519-CR, 2015 WL 4760187, at *6 (Tex. App.—Beaumont Aug. 12, 2015, no pet.) (mem. op., not designated for publication) (concluding an indictment charging an offense containing the element of "serious bodily injury," on its face, indicated crimes of a serious and violent nature, weighing in favor of a high bail); *Ex parte Payten*, No. 02-13-00447-CR, 2013 WL 5968449, at *3 (Tex. App.—Fort Worth Nov. 7, 2013, no pet.) (mem. op., not designated for publication) (considering nature and circumstances of offense to be violent where probable cause affidavit indicated complainant had been shot by appellant).

Though Banks provided evidence of additional mitigating factors, such as his community ties and employment history, we weigh this against evidence of the primary factors as well as evidence of Banks's criminal history and information tending to indicate

that Banks is a potential danger to public safety. *See Ex parte Cardenas*, 557 S.W.3d at 730; *see also Ex parte Davila*, No. 04-19-00276-CR, 2019 WL 4280067, at *2–3 (Tex. App.—San Antonio Sept. 11, 2019, no pet.) (mem. op., not designated for publication) (concluding evidence of defendant's inability to afford bail and his family ties to community did not outweigh "the nature and circumstances of the offenses charged, the length of the potential sentences, [appellant's] prior criminal record and history of non-compliance with bond conditions"). It is concerning that Banks's criminal record shares factual similarities with the instant offenses—i.e., shooting individuals in seemingly unprovoked circumstances during periods prohibiting Banks's mere possession of a firearm. *See Ex parte Gonzalez*, 383 S.W.3d 160, 166 (Tex. App.—San Antonio 2012, pet. ref'd) (concluding a defendant's history of committing seemingly "random and inexplicable" acts of violence suggest a danger to the community); *see also Ex parte Cardenas*, 557 S.W.3d at 730; *Ex parte Cano*, 2023 WL 2920305, at *6 ("Considering [appellant's] long and recurring criminal history, the trial court could have reasonably determined that [appellant] posed a continuing danger to the community."). Banks's demonstrated propensity to re-offend during periods of supervision and confinement further suggests the necessity of a high bail bond to ensure Banks's compliance and the safety of the community. *See Ex parte Cardenas*, 557 S.W.3d at 730; *see also Ex parte Bartolo*, No. 01-22-00544-CR, 2022 WL 17254957, at *3 (Tex. App.—Houston [1st Dist.] Nov. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (concluding "a defendant's right to pretrial bail may be subordinated to the greater needs of society" where appellant's commission of the instant

10

offense (felony murder) was further aggravated by his use of a firearm—in violation of a previously imposed bond condition).

The burden was on Banks to prove that bail was excessive, *see Ex parte Rubac*, 611 S.W.2d at 849; *Ex parte Reyes-Martinez*, 653 S.W.3d at 280, and on this record, the trial court did not abuse its discretion in determining that Banks did not satisfy his burden. *See Ex parte Cardenas*, 557 S.W.3d at 729–30; *see also Ex parte Jackson*, No. 03-18-00494-CR, 2019 WL 1782037, at *1 (Tex. App.—Austin Apr. 24, 2019, no pet.) (mem. op., not designated for publication) (affirming bail as reasonable where trial court set amounts at $350,000 for aggravated-assault and $100,000 for unlawful possession of a firearm by a felon). We overrule Banks's sole issue.

## IV.    CONCLUSION

We affirm the trial court's orders of denial.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
11th day of May, 2023.

11